RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0071P (6th Cir.)
File Name: 01a0071p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

RICHARD J. PARRIS,
  *Defendant-Appellant.*

No. 99-3878

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 97-00168—Algenon L. Marbley, District Judge.

Argued: March 6, 2001

Decided and Filed: March 15, 2001

Before: MARTIN, Chief Judge; MOORE, Circuit Judge;
TARNOW, District Judge.[*]

---

**COUNSEL**

**ARGUED:** David J. Graeff, Columbus, Ohio, for Appellant.
Gregory V. Davis, UNITED STATES DEPARTMENT OF
JUSTICE, APPELLATE SECTION TAX DIVISION,

---

[*] The Honorable Arthur J. Tarnow, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

Washington, D.C., for Appellee.  **ON BRIEF:**  David J. Graeff, Columbus, Ohio, for Appellant.  Gregory V. Davis, Robert E. Lindsay, Alan Hechtkopf, UNITED STATES DEPARTMENT OF JUSTICE, APPELLATE SECTION TAX DIVISION, Washington, D.C., for Appellee.

————————

## OPINION

————————

BOYCE F. MARTIN, JR., Chief Judge.  In May 1998, a federal jury convicted Richard Parris of twelve counts of aiding or assisting in the preparation or presentation of false or fraudulent income tax returns and two counts of mail fraud. The District Court sentenced him to, in sum, six years imprisonment, three years of supervised release, and a restitution payment of almost $200,000.  We hereby AFFIRM.

Although his exact qualifications in the field are unclear, Parris purports to be some type of accountant.  The instant prosecution ensued when the United States detected the rather novel "tax restructuring program" he devised in this capacity for clients of his Columbus, Ohio, company, the Omega Tax Planning Group.  For a fee of between $2500 and $3000, Parris would establish an S-corporation, which he would have employ the taxpayer, and a limited partnership, which he would have own the taxpayer's personal residence and rent it to the S-corporation.  As a result, the taxpayer would then be living at the S-corporation's "headquarters," putatively for its benefit, and the S-corporation would claim virtually all of the taxpayer's personal living expenses (including food, vacations, and the cost of children's educations) as business deductions.  Because Parris designed these dubious S-corporations to make no money, their year-end finances typically reflected a significant net loss, which Parris then passed through to the taxpayer's individual return and, as Parris intended from the beginning, drastically reduced the individual's taxable income.

We fail to see how Parris could reasonably believe that his scheme was legal. As the District Court found, he must have willfully disregarded the Internal Revenue Code and its attendant regulations, pretending they sanctioned an arrangement he knew they did not. Moreover, after a thorough review of the record of this matter, we are satisfied that the evidence adduced at trial supports the outcome. *See, e.g.*, *United States v. Williams*, 154 F.3d 655, 657-58 (6th Cir. 1998); *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989); *United States v. Castile*, 795 F.2d 1273, 1277-78 (6th Cir. 1986); *United States v. Lester*, 363 F.2d 68, 73 (6th Cir. 1966). Likewise, the District Court's administration of the trial was in accordance with settled law. *See, e.g.*, *United States v. Reliford*, 58 F.3d 247, 250 (6th Cir. 1995); *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991); *United States v. Bavers*, 787 F.2d 1022, 1028-29 (6th Cir. 1985). Although we need not devote substantial attention to the bulk of Parris's arguments on appeal, we are presented here with an appropriate opportunity to address further our focus at oral argument, issues related to lay testimony. However, we uphold the manner in which the District Court handled the topic on this occasion.

Parris complains that lay witnesses were improperly permitted to offer opinion testimony on the "ultimate issue," whether he was in fact guilty of the crimes charged. At his trial, eight lay witnesses testified in one form or another that they did not participate or stopped participating in Parris's tax restructuring plan because they believed it was "illegal." Two federal rules of evidence apply to the question of whether this was proper for the jury to hear. First, Rule 701 allows lay opinion to be admitted at all only if it is "(a) rationally based on the perceptions of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Second, Rule 704 normally permits ultimate issue testimony (a prominent change from the common law), subject to the requirements of Rule 701. We considered the relationship of these provisions in *Torres v. County of Oakland*, 758 F.2d 147 (6th Cir. 1985).

In *Torres*, we concentrated our analysis on when lay testimony on an ultimate issue is "helpful" under Rule 701(b). We noted that the Advisory Committee counsels the exclusion of "opinions phrased in terms of inadequately explored legal criteria." *Torres*, 758 F.2d at 150; FED. R. EVID. 704 advisory committee's note. Similarly, we expressed strong disfavor for this sort of testimony when it consists of a legal conclusion, realizing the danger of "conveying the witness's unexpressed, and perhaps erroneous, legal standards to the jury," but acknowledged that "it is often difficult to determine whether a legal conclusion is implicated." *Torres*, 758 F.2d at 150. Consequently, we grant trial judges "a relatively wide degree of discretion in admitting or excluding testimony which arguably contains a legal conclusion." *Id.* Nevertheless, *Torres* mandates exclusion of lay opinion testimony containing terms which have "a separate, distinct, and specialized meaning in the law different from that present in the vernacular," and lists "fiduciary relationship," "unreasonably dangerous," and "discriminated against because of . . . national origin" as inadmissible under the test it sets forth. *Id.* at 151.

We cannot agree that, in this particular context, the use of the word "illegal" violated the *Torres* rule or, in any event, had a meaningful impact upon the verdict. Parris offered prospective customers the opportunity to have their income tax obligations completely eliminated. Regardless of how strongly some would like it to be possible, such an arrangement is so outrageous that its generalized characterization as "illegal" is fair, if maybe a bit casual. It is so outrageous that it is inconsequential that such a characterization was not the product of any formal review of the law. And it is so outrageous that Parris need not be given a new trial even if, *arguendo*, the disputed testimony in this case might have technically constituted a *Torres* error. Here, its effect would have been overcome by the District Court's accurate, thorough, and clear instructions to the jury before it began to deliberate Parris's fate. Although a curative admonition immediately following a possible mistake can also be useful, and it is often preferable for a District Court to

err on the side of caution when determining whether one should be given at that time, it is not always necessary. A hesitation to disrupt the flow of a trial, especially when a witness is on the stand and, as is this one, the question of error is relatively close, easily falls within the discretion *Torres* contemplates. Under these circumstances, Parris is not entitled to relief.

Judgment AFFIRMED.